SHARONE HUBERT AND ETIENNE
HUBERT,
     Plaintiffs,

     v.

DEPARTMENT OF CORRECTIONS, KYLE
GODDING, MICHAEL DAVIS, KEVIN
CURRY, AND CICERO CALLENDER,
     Defendants.

No. 3:17-cv-248 (VAB)

## RULING AND ORDER ON MOTION TO CONSOLIDATE AND MOTION TO DISMISS

This case is the second in a pair of related cases brought by Sharone and Etienne Hubert ("Plaintiffs") against the Department of Corrections, Kyle Godding, Michael Davis, Kevin Curry, and Cicero Callender ("Defendants").

The first, *Hubert v. Correction et al.* ("*Hubert I*"), No. 14-cv-476 (VAB), has proceeded to the summary judgment stage. The Court issued an Order in that case granting in part and denying in part Defendants' motion to dismiss, and at this point, only those claims against the Department of Corrections and Defendants in their official capacities survive. 2017 WL 706166, at *12 (D. Conn. Feb. 22, 2016). All claims against Defendants Davis, Godding, Curry, Callender, and Austin in their individual capacities were dismissed for lack of personal jurisdiction. *Id.* at *11.

The Huberts filed this second lawsuit on February 16, 2017, re-asserting claims against the Department of Corrections, Kyle Godding, Michael Davis, Kevin Curry, and Cicero Callender in their individual capacities. *Hubert v. Corrections, et al.*, No. 3:17-cv-248 ("*Hubert*

*II*"), Compl., ECF No. 1. The Huberts argue that this Court has federal question jurisdiction over the case because they have brought claims under 42 U.S.C. §§ 1981, 1983, and 1988, and claims that the Court has jurisdiction over the claims under Connecticut General Statute § 52-592, a savings provision for accidental failure of suit. Am. Compl. ¶ 2, ECF No. 15.

This ruling addresses two pending motions: Plaintiffs' motion to consolidate *Hubert II* with *Hubert I*, ECF No. 28, and Defendants' motion to dismiss, ECF No. 20. For the reasons discussed below, Plaintiffs' motion to consolidate is **DENIED**, and Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to dismiss is granted as to all counts against all Defendants, except for Count Three against Lieutenant Callender, and Mr. Hubert is dismissed from the case.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs acknowledge that there are no material factual differences between *Hubert I* and *Hubert II*. Memo. in Support of Mot. Consolidate at 3, ECF No. 28-1 ("To be sure, the facts are identical; the Plaintiff's legal theories are identical, the parties are the same, absent Defendant Austin from *Hubert II*; although discovery is complete in *Hubert I*, *Hubert II* requires minimal discovery[.]"). The facts here therefore are very similar to or the same as those stated in the Court's Order granting in part and denying in part Defendants' motion to dismiss in *Hubert I*. *See* Order, 2016 WL 706166 (D. Conn. Feb. 22, 2016). The facts and procedural history of the cases are reiterated here only to the extent necessary to decide the pending motions to consolidate and to dismiss.

### A.      Factual Allegations

Sharone Hubert and Etienne Hubert, a married couple, both work for the Connecticut Department of Corrections (DOC). Compl. ¶¶ 17–19. Ms. Hubert is an African-American woman, and she alleges that she endured sexual harassment, sexual assault, and race- and

gender-based discrimination while she worked at DOC. Compl. ¶ 34. For some time, Mr. Hubert

worked at the same facility as Ms. Hubert, in Cheshire, and he brings a loss of consortium claim

related to her alleged mistreatment. Am. Compl. ¶ 20–21.

Ms. Hubert alleges a number of incidents of sexual harassment including:

- Defendants allegedly regularly called Ms. Hubert "dark and sexy." Am. Compl. ¶ 194.

- Ms. Hubert was allegedly told that she "must lose her 'trash' in order to be promoted," which she understood to mean that she would need to leave her husband. *Id.* ¶ 195–96.

- Defendants allegedly placed bets on "which supervisor would first sleep with" Ms. Hubert. *Id.* ¶ 224.

- Deputy Warden Davis, a supervisor of Ms. Hubert, allegedly sent her photographs of his penis. *Id.* ¶ 35.

- Deputy Warden Davis allegedly directed Ms. Hubert to "inventory gym equipment, walked into the room and turned off the lights in the room, took out his erect penis, grabbed her from behind, inserted his hand down the front of her pants, stuck his tongue into her mouth, and insisted that she allow[] him to place his erect penis at the tip of her vagina." *Id.* ¶ 26.

- Captain Kyle Godding, another supervisor of Ms. Hubert, also allegedly sent Ms. Hubert photographs of his penis. *Id.* ¶ 106.

- Correction Officer Curry also allegedly sent Ms. Hubert three photographs of his penis. *Id.* ¶ 122.

- Lieutenant Callender, another supervisor of Ms. Hubert, allegedly repeatedly asked her to have sexual intercourse with him. *Id.* ¶¶ 169–70. Ms. Hubert alleges that after she rebuffed his advances, Mr. Callender disproportionately disciplined her when she arrived late to roll call by two minutes by sending her colleagues to the bathroom to retrieve her. *Id.* ¶ 174.

The Huberts allege that they both feared retaliation from their supervisors "who were

responsible for making the Plaintiffs' work schedules, complet[ing] their work evaluations, their

promotions, demotions, their assignments to their respective posts" and other job decisions. *Id.* ¶

27. Plaintiffs claim that the "abusive and unlawful conduct . . . has had a detrimental impact on

their marital relations, including the loss of consortium, society, and affection." *Id*. ¶ 28.

The Complaint alleges that Mr. Hubert was transferred from Cheshire Correctional Institute "to better facilitate [Defendants'] individual and collective physical and mental assaults upon his wife directly, and upon him indirectly." *Id.* ¶ 38.

Ms. Hubert alleges that she was promoted to the rank of Lieutenant on September 11, 2009, and then demoted to correction officer on January 27, 2010 "based on the fact she had been sexually assaulted, sexually harassed, and subjected to retaliation by the Defendants." *Id.* ¶ 48. The Huberts allege that the Department of Corrections has "knowingly maintained an extreme, ongoing and continuously discriminatory, and ongoing and continuously hostile work environment against the Plaintiffs on the basis of racial discrimination, harassment, sexual harassment, retaliation, and hostile work environment." *Id.* ¶ 54.

**B.      Procedural History**

Before filing either lawsuit, the Huberts filed charges against the Department of Corrections and its agents with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the United States Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 4. She received right to sue letters from the CHRO on February 21, 2014, and from the EEOC on January 10, 2014, and July 7, 2014. *Id.*

The Huberts filed the original Complaint in *Hubert I* in April 2014. Defendants moved to dismiss the Complaint, and the Court found that the individual defendants, Godding, Davis, Austin, Curry, and Callender, had not been served properly and dismissed the claims against them in their individual capacities. 2016 WL 706166, *12 (D. Conn. Feb. 22, 2016). The claims against Defendants in their official capacities under Title VII, 42 U.S.C. §§ 1985, 1986, and 1988 went forward. *Id.* The parties then conducted discovery, which was completed in January 2017. *Hubert II* Mot. Consolidate at 3. During the discovery process, the Court issued an order

precluding Plaintiffs from relying on any documents they failed to produce in response to Defendants' discovery requests, including "(a) authenticating data such as metadata or telephone numbers for text message exhibits previously produced by Plaintiff, (b) certain text messages that Plaintiff did not include with her previous production, (c) copies of Plaintiff's tax returns, and (d) information from Plaintiff's medical providers for whom Plaintiff has not provided completed medical authorizations to Defendants." *Hubert I*, 14-cv-476, Dkt. No. 99 (Sept. 19, 2016).

Plaintiffs re-filed their Complaint in this lawsuit, *Hubert II*, reasserting their claims against the Connecticut Department of Correction and against the individual defendants who were dismissed in *Hubert I*, except for Defendant Austin. Compl. Plaintiffs filed an Amended Complaint on March 22, 2017, which alleges violations of 42 U.S.C. §§ 1981, 1983, 1988, and Connecticut common law. Am. Compl. The Complaint in *Hubert II* relies on exhibits and depositions produced in *Hubert I*.

Plaintiffs argue that this Court has jurisdiction over Defendants in their individual capacities under Connecticut General Statute § 52-592, which provides a savings clause for cases that were dismissed on certain procedural grounds, and not on the merits. The Huberts bring claims based on: the equal protection and due process clauses under 42 U.S.C. §§ 1981, 1983, and 1988 (Count One); intentional infliction of emotional distress (Count Two); the equal protection and due process clauses under 42 U.S.C. § 1983 (Count Three); loss of consortium (Count Four); and invasion of privacy (Count Five). Am. Compl. ¶¶ 264–342.

Defendants move to dismiss, arguing that most of Plaintiffs' claims are barred by a three-year statute of limitations, and that the alleged incidents that occurred after February 2014 fail to state a claim upon which relief can be granted; that Section 52-592 does not confer jurisdiction

over this matter; and that *Hubert II* is "merely an attempt to circumvent the discovery preclusion orders issued by this Court in *Hubert I*." Mot. Dismiss at 1. Defendants also assert that Counts One and Three are barred by qualified immunity, and Counts Two and Four are barred by statutory immunity. *Id.* at 1–2.

Plaintiffs oppose Defendants' motion to dismiss, ECF No. 23, and also move to consolidate *Hubert II* with *Hubert I*, ECF No. 28.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 42(a), the trial court is empowered to join or consolidate cases "involving 'a common question of law or fact.'" *Deutsche Bank Nat. Trust Co. v. WMC Mortg., LLC*, No. 3:12-cv-933 (CSH), 2014 WL 3824333, at *1 (Aug. 4, 2014). "To succeed on a motion for consolidation, the moving party must demonstrate that the actions sought to be consolidated are before the same court and contain common questions of law or fact." *Molinari v. Bloomberg*, No. CV-08-4539 (CPS) (JO), 2009 WL 87576, at *4 (E.D.N.Y. Jan. 13, 2009). "Even upon the requisite showing, a court has broad discretion in determining whether consolidation is appropriate by balancing the economy gained and prejudice to parties. *Id.* (citing *Haas v. Brookhaven Memorial Hosp.*, 2008 WL 822121, at *2 (E.D.N.Y. Mar. 26, 2008) (denying motion to consolidate after finding that consolidation would confuse the issues involved in each case)).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). At this stage, the court views the facts alleged in the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); *see also Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure

8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'." (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

Dismissal under Rule 12(b)(1) is appropriate when the court lacks the statutory or constitutional power to adjudicate the claim. Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting the claim bears the burden of establishing that the court has subject-matter jurisdiction over it. *P. v. Greenwich Bd. of Educ.*, 929 F. Supp. 2d 40, 45–46 (D. Conn. 2013) (citing *Makarova*, 201 F.3d at 113). In evaluating whether the plaintiff has established that the court has subject matter jurisdiction, "the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as afidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

The Court will grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("*All* complaints must be read liberally; dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory."). The plaintiff's allegations need not be detailed, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555. The court will view the facts in the light most favorable to the plaintiff, and will take "all of the factual allegations in the complaint as true," but will not accept legal conclusions

pleaded as factual allegations. *Iqbal*, 556 U.S. at 678; *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

## III. DISCUSSION

### A. Motion to Consolidate

Plaintiffs argue that consolidating this case with *Hubert I* will allow the parties to avoid unnecessary costs, streamline the litigation, and prevent problems from arising related to claim preclusion. Mot. to Consolidate at 2–3. The Court disagrees.

Under Federal Rule of Civil Procedure 42(a), the district court, in its discretion, may consolidate actions that involve a common question of law or fact. *See Molinari*, 2009 WL 87576, at *4. "[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *see also Goins v. JBC & Assoc., P.C.*, 352 F. Supp. 2d 262, 266 (D. Conn. 2005) ("It is well-established that 'a district court may stay or dismiss a suit that is duplicative of another federal court suit' in the exercise of its discretion, 'as part of its general power to administer its docket.'") (quoting *Curtis*, 226 F.3d at 138).

In this case, consolidation would cause delay and confusion over which claims, and against which defendants, remain. *See Smith v. Everson*, No. CV-06-0791 (SJF) (AKT), 2007 WL 2294320, at *3 (E.D.N.Y. Aug. 6, 2007) (denying motion to consolidate because "the risk of confusion would occur as a result of consolidation, rather than vice versa"). The Court therefore denies the motion to consolidate, and the Court will dismiss any duplicative claims. *See Curtis*, 226 F.3d at 138 (finding that dismissing a duplicative lawsuit can foster judicial economy, promote unified, comprehensive litigation, and protect parties from litigating multiple suits over the same matters).

"The determination of whether a suit is duplicative is informed by the doctrine of claim preclusion." *Goins*, 352 F. Supp. 2d at 266. "[A] suit is duplicative, and claims would be precluded, where 'the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit.'" *Id.* (quoting *Curtis*, 226 F.3d at 139). Plaintiffs have emphasized that *Hubert II* shares facts, legal theories, and Defendants with *Hubert I*.[1] Thus, the "same or connected transactions are at issue and the same proof is needed to support the claims in both suits." *Curtis*, 226 F.3d at 139.

In *Curtis*, the Second Circuit explained that, "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Id.* at 138. The Court explained that when "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits," a duplicative claim will properly be dismissed. *Id.* at 139 (explaining that dismissing a claim for duplicative litigation is related to claim preclusion).

Reviewing the district court's decision to dismiss a complaint as duplicative, the Second Circuit therefore affirmed, to the extent that the second complaint had asserted claims based on facts that existed at the time that the plaintiff filed the first complaint, *id.* at 140 ("The district court correctly held that plaintiffs may not file duplicative complaints in order to expand their legal rights . . . [b]ut this rule applies only to the *Curtis II* claims arising out of the same events as those alleged in *Curtis I*."), including facts that the plaintiffs had failed to raise in the first complaint. *Id.* ("[M]uch of the second amended complaint alleged events that had occurred prior

---

[1] Although *Hubert II* raises claims against Defendants in their individual capacities, which did not survive the motion to dismiss in *Hubert I*, the Complaints are duplicative because Plaintiffs sued the individual defendants in both cases. The only claim that could survive this motion to dismiss despite being duplicative is the claim against Lieutenant Callender, because that claim falls within the statute of limitations, as discussed below.

to *Curtis I*'s filing" and "[i]t was not an abuse of discretion to prevent plaintiffs" from attempting to avoid the consequences of their delay in filing an amended complaint).

As to the claims asserted based on facts that arose after the plaintiffs had filed the first complaint, the Second Circuit reversed. *Id.* at 139 ("While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit."). The Court therefore struck a balance between "the trial court's need to manage and ultimately decide its cases with the plaintiffs' right to litigate all of [the defendant's] allegedly unlawful conduct," by upholding the district court's dismissal of duplicative claims based on facts that occurred before the filing of the initial complaint, and reversing the dismissal of claims based on facts that occurred after the filing of the initial complaint. *Id.* at 140–41.

The operative complaints in *Hubert I* and *Hubert II* both allege the same sexual misconduct and employment discrimination, based on the same facts that occurred before Plaintiffs filed the Complaint in *Hubert I*. *See* Mot. to Consolidate at 3 ("There are no materially factual differences currently existing between both cases . . . ."); *see also Davis v. Norwalk Econ. Opp. Now, Inc.*, 534 Fed. App'x. 47, 48 (2d Cir. 2000) (finding that district court properly dismissed claims as duplicative where "the two complaints [were] not simply related in time, space and origin" but rather "nearly identical"). Furthermore, the individual defendants were dismissed in *Hubert I* for failure to effect proper service; filing a second Complaint in *Hubert II* is an attempt to bring the same claims a second time. *See Curtis*, 226 F.3d at 140 ("[P]laintiffs may not file duplicative complaints in order to expand their legal rights."). The second Complaint is duplicative in the claims that it brings against all Defendants; there are, however, non-duplicative claims brought against Lieutenant Callender.

The Court therefore declines to consolidate these cases, and will next address the arguments raised in the motion to dismiss.

**B.      Motion to Dismiss**

Defendants also move to dismiss the entire Complaint, arguing that (1) the claims are barred by the three-year statute of limitations applicable to state law torts claims under Section 1983; (2) Section 52-592 does not confer jurisdiction over the claims; (3) the litigation is duplicative and "merely an attempt to circumvent the discovery preclusion orders issued by this Court in *Hubert I*"; (4) the claims against Lieutenant Callender in Counts One and Three fail to state a claim upon which relief can be granted; and (5) the claims against Lieutenant Callender in Counts Two and Four are barred by statutory immunity. Mot. Dismiss at 3. The Court addresses each argument in turn.

**1.      Jurisdiction under Connecticut Tort Statutes of Limitations and Connecticut General Statute § 52-592**

**a.      Statutes of Limitations**

Defendants argue that Plaintiffs' claims are barred by the statute of limitations, and that the savings provision in Connecticut General Statute § 52-592 does not apply. Mot. Dismiss at 11. Plaintiffs argue that this Court has jurisdiction over Defendants in their individual capacities under Connecticut General Statute § 52-592 because *Hubert I* was not dismissed against Defendants in their individual capacities on the merits, but rather dismissed because of insufficient service of process. Am. Compl. ¶ 12. The Court agrees with Defendants, that Plaintiffs' claims, except for Plaintiffs' claims against Lieutenant Callender, are barred by the statute of limitations.

Plaintiffs' Amended Complaint asserts three counts of state-law tort claims: intentional infliction of emotional distress, loss of consortium, and invasion of privacy. Am. Compl. ¶¶ 280–

89, 309–42. Connecticut law imposes a three-year statute of limitations on each of those claims, which accrues on "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577; *Ingram v. Sochacki*, 2017 WL 5473441 (D. Conn. Nov. 13, 2017).

Plaintiffs also assert claims under Sections 1981 and 1983. Am. Compl. ¶¶ 264–79, 290–308. Those federal statutes do not establish their own statutes of limitations; federal courts instead "select the state statute of limitations 'most analogous' . . . and 'most appropriate.'" *Owens v. Okure*, 488 U.S. 235, 239 (1989) (internal citations omitted); *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 469 (1975) ("As a general practice, where Congress has created a federal right without prescribing a period for enforcement, the federal courts uniformly borrow the most analogous state statute of limitations."). The Supreme Court has recognized that "for statute-of-limitations purposes, '§ 1983 claims are best characterized as personal injury actions[.]'" *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994) (quoting *Wilson v. Garcia*, 471 U.S. 261, 279 (1985)).

In Connecticut, therefore, the three-year statute of limitations established in § 52-577 serves as the statute of limitations for a § 1983 claim as well. *See Meyers v. Kishimoto*, 2015 WL 4041438, at *11 n.15 (citing *Lounsbury*, 25 F.3d at 133, and applying three-year statute of limitations established in § 52-577 to § 1983 claim). The same three-year statute of limitations applies for § 1981 claims. *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 716 (D. Conn. 2003) (citing *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 131 (2d Cir. 1996), *cert. denied*, 520 U.S. 1228 (1997)).

"Although the federal court looks to state law to determine the applicable statute of limitations for claims arising under Section 1983, the court looks to federal law to determine when a federal claim accrues." *Ingram*, 2017 WL 5473441, at *2 (Nov. 13, 2017). Under federal

12

law, "a cause of action accrues 'when the plaintiff knows or has a reason to know of the harm or injury that is the basis of the action.'" *Id.* (quoting *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003)).

In this case, the statute of limitations would begin running when the alleged incidents of sexual misconduct occurred, under either the state-law standard or the federal-law standard, because Ms. Hubert would have "known of the harm or injury that is the basis of the action" as soon as it occurred. *See M.D.*, 334 F.3d at 221. All of the claims, except the claims against Lieutenant Callender, occurred in or before 2013. The Huberts allege that Defendant Davis sent pictures of his exposed penis to Ms. Hubert, and shortly after that assigned her to do work in a room alone, where he followed her, turned off the lights, grabbed her from behind, and demanded that she have sex with him, in July 2012. Am. Compl. ¶ 26. Defendant Godding allegedly sent Ms. Hubert photographs of his exposed, erect penis in August 2013. *Id.* ¶ 106. Defendant Curry allegedly sent Ms. Hubert pictures of his exposed, erect penis in December 2013. *Id.* ¶ 122. All of those claims occurred more than three years before Plaintiffs filed the Complaint in this lawsuit, and so, putting aside for now the question of whether the savings provision applies in this case, the statute of limitations has run.

The facts underlying Plaintiffs' claim against Defendant Callender allegedly occurred in May 2014. Compl. Exs. 28, 39. Defendants admit that those claims are not time barred. Mot. Dismiss at 16–17.

### b. Savings Provision under Section 52-592

Connecticut's savings provision, Section 52-592, is "remedial in nature, 'passed to avoid hardships arising from an unbending enforcement of limitation statutes.'" *Davis v. Family Dollar Store*, 78 Conn. App. 235, 239 (2003) (quoting *Isaac v. Mount Sinai Hospital*, 210 Conn. 721,

728 (1989)), appeal dismissed, 271 Conn. 655 (2004). It provides:

> (a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction . . . the plaintiff . . . may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.

Conn. Gen. Stat. § 52-592(a); s*ee also Hodges v. Glenholme Sch.*, ___ Fed. App'x ___, 2017 WL 5495513, at *3 (Nov. 16, 2017) ("Conn. Gen. Stat. § 52-592(a) allows a plaintiff to re-file a dismissed action, within one year of dismissal, if two requirements are met: (1) the original action must have been 'commenced' within the applicable statute of limitations; and (2) the original action must have failed because of one of the specific procedural reasons enumerated in the statute.").

Section 52-592 applies to Plaintiffs' state law claims of intentional infliction of emotional distress, loss of consortium, and invasion of privacy (Counts Two, Four, and Five). It does not apply automatically to federal law claims, but "once a federal court borrows a state statute of limitations, it generally should also borrow the related provisions, pertaining to tolling, revival and so forth, as interpreted under state law, unless such an unmodified borrowing would be inconsistent with a strong federal policy underlying the federal cause of action." *Williams v. State of Connecticut Dep't of Corr.*, No. 3:16-cv-01612 (VAB), 2017 WL 2838081, at *4 (D. Conn. June 30, 2017) (quoting *Williams v. Walsh*, 558 F.2d 667, 674 (2d Cir. 1977)). The savings statute therefore also applies to Counts One and Three, which assert violations of Sections 1981 and 1983.

Defendants argue that Section 52-592 does not save this case because Plaintiffs did not

file the original lawsuit within the statute of limitations. Mot to Dismiss at 17–18. Defendants argue that, for an action to be commenced, Defendants needed to have been provided effective notice of the lawsuit, even if service had not been perfected before the statute of limitations expired. *Id.* at 18.

Federal Rule of Civil Procedure 4(m) requires that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The Court will extend the time of service "if the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m).

The Connecticut Supreme Court has interpreted Section 52-592 to mean that an action is commenced "when the defendant received effective notice of that action" within the applicable statute of limitations. *Rocco v. Garrison*, 268 Conn. 541, 551 (2004). Effective notice does not mean "good, complete and sufficient service of process," but rather notice enough to inform the defendant of the action. *Id.* at 552 ("[A]lthough the plaintiffs' counsel did not serve a formal summons upon the defendant within the time period prescribed by the applicable statute of limitations, all of the requirements of [federal service of process] were satisfied and all of the necessary papers to obtain a waiver of formal service were delivered to the defendant . . . [and so] the defendant received actual notice of the action within the time period prescribed by the statute of limitations."); *see also Dorry v. Garden*, 313 Conn. 516, 529 (2014) (finding actual notice where "plaintiff's counsel sent the writ, summons and complaint to a marshal [within time], by overnight delivery and requested that the marshal effect in hand service on the defendants" and there was evidence that defendants "saw these documents" four days later, within the statute of limitations period); *Hodges v. Glenholme Sch.*, No. 3:15-cv-1161 (SRU),

2016 WL 4792184 (D. Conn. Sept. 13, 2016) (where marshal serving the complaints received the summons and complaint against the defendants six days after the statute of limitations had run, "Plaintiff properly concedes that Connecticut law deems an action has 'commenced' for purposes of the statute of limitations only after the service of the summons and complaint."); *but see Chappetta v. Soto*, 581 F. Supp. 2d 292, 298 (D. Conn. 2008) ("the better reading of *Rocco* is that the Court held that the defendant's receipt of actual notice of the pendency of a federal court action is sufficient, but not necessary, to commence an action for purposes of the savings statute," and given the "differences between commencement of an action in federal and state court," in federal court, an "action is commenced for purposes of the savings statute when it is filed").

Although Plaintiffs' case was not adjudicated on the merits, Plaintiffs have not established that their failure to serve proper service was "due to unavoidable accident or the default or neglect of the officer to whom it was committed," and have failed to show that Defendants had effective notice of the lawsuit against them in their individual capacities. *See* Conn. Gen. Stat. § 52-592; *Rocco*, 268 Conn. at 551. In contrast to the cases above that describe imperfect efforts to supply a marshal with the required papers to serve process on various defendants, *Rocco*, 268 Conn. at 551, or situations where the defendants did, in fact, see the complaint within the statute of limitations period, *Dorry*, 313 Conn. at 529. Plaintiffs here have not established that they provided the individual defendants with effective notice. Instead, Plaintiffs left copies of the summons and complaint with the Hartford office of the Attorney General of the State of Connecticut. As this Court noted in the *Hubert I* motion to dismiss, Plaintiffs "have provided no affidavit, from counsel or from the state marshal, attesting that the marshal received the summons on or about [the deadline] or as to the reason service was not

effected until approximately ten weeks" after the deadline. *Hubert I* Order, Dkt. 67 at 7.

Because the action was not commenced against the individual defendants within the statute of limitations, the savings statute, Section 52-592, therefore does not apply to extend the statute of limitations for Plaintiffs' claims to this second lawsuit. All of Plaintiffs' claims in *Hubert II* except for the claims against Defendant Callender—which occurred in May or June 2014, less than three years before *Hubert II* was filed—are barred by the statute of limitations.

### 2. Claims Against Lieutenant Callender

The only remaining claims are those against Lieutenant Callender. Plaintiffs assert two federal claims: that he acted in violation of 42 U.S.C. § 1981 (Count One) and 42 U.S.C. § 1983 (Count Three). Plaintiffs also assert two tort claims: intentional infliction of emotional distress (Count Two) and loss of consortium (Count Four). Because Mr. Hubert lacks standing to bring any of the claims other than the loss of consortium claim, *see Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.%22a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (explaining that, to have Article III standing, plaintiff must allege "'personal stake in the outcome of the controversy'" and that although "[o]thers may benefit collaterally from a resolution favorable to the plaintiff," plaintiff must personally establish concrete adverseness) (quoting *Warth v. Weldin*, 422 U.S. 490, 498 (1975)), and any claims brought by him under Section 1981 and Section 1983 and for intentional infliction of emotional distress would have to be dismissed, the Court will only address a claim for him under Court Four for loss of consortium.

### a. Federal Claims (Counts One and Three)

Defendants move to dismiss, arguing that Ms. Hubert has failed to state a claim upon which relief can be granted; Lieutenant Callender is protected by qualified immunity on Counts One and Three; and Lieutenant Callender is protected by statutory immunity on Counts Two and

Four. Mot. Dismiss at 1–2. Defendants argue that Ms. Hubert has not sufficiently alleged a constitutional violation to support a claim under either § 1981 or § 1983. The Court agrees with respect to her Section 1981 claim, but disagrees with respect to her Section 1983 claim. She has alleged a viable Section 1983 claim based on her allegations of a hostile work environment.

### 1.    Section 1981 (Count One)

Ms. Hubert argues that Lieutenant Callender violated her rights to the equal protection of the laws, the due process of law, and the "rights secured by 42 U.S.C. § 1981 to be free from discrimination on the basis of ongoing and continued race, color, sex, retaliation, sexual harassment, harassment and hostile work environment, and in the making, enforcement and performance of contract, including the employment relationship[.]"[2] Am. Compl. ¶ 264. She argues that Lieutenant Callender "intentionally, negligently, with malice, or deliberate indifference, infringed her  rights secured by the First Amendment to Free Speech to petition for redress from the government by . . . [c]ontinuously and selectively enforcing rules and requirements for employee conduct," denying her employment security, making false or misleading statements about her, filing retaliatory job evaluations, failing to install meaningful procedures to prevent civil rights violations, and failing to discipline employees who violated her civil rights. *Id.* ¶ 265. She also alleges that Lieutenant Callender contributed "to the ongoing and continuously harassing and hostile work environment" thereby violating her rights under the First and Fourteenth Amendments. *Id.* ¶ 270.

Section 1981, enacted as part of the Civil Rights Act of 1866, provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory

---

[2] Plaintiffs also allude to violations of 42 U.S.C. § 1983 in this Count, Am. Compl. ¶ 265, but the section heading asserts claims under only § 1981. The Court will address Plaintiffs' § 1983 claims in its analysis of Count Three, which explicitly brings claims under 42 U.S.C. § 1983.

to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. In 1991,

Congress amended the statute to add a definition of "make and enforce contracts" that included

the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions

of the contractual relationship." 42 U.S.C. § 1981(b); *see also Jones v. R.R. Donnelley & Sons

Co.*, 541 U.S. 369, 372–73 (2004). Through that amendment, Congress extended § 1981 to apply

to "harassing conduct that occurred after the formation of the contract"—i.e., during

employment, not merely during the formation of the employment contract. *Id.* at 372; *see also

Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) (holding that § 1981 does not apply

after the formation of a contract), *abrogated by* 42 U.S.C. § 1981(b).

 To establish a claim under 42 U.S.C. § 1981, Ms. Hubert must allege facts "supporting

the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to

discriminate on the basis of race; and (3) discrimination concerning one of the statute's

enumerated activities." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000).

Section 1981, "like the Equal Protection Clause, can be violated only by purposeful

discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Furthermore, conclusory allegations of racial discrimination do not support a claim under §

1981, and instead, "the plaintiff must specifically allege the events claimed to constitute

intentional discrimination as well as circumstances giving rise to a plausible inference of racially

discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994).

 A § 1981 claim also must "initially identify an impaired 'contractual relationship' under

which the plaintiff has" or would have rights, had it been formed. *Domino's Pizza, Inc. v.

McDonald*, 546 U.S. 470, 476 (2006). The Supreme Court in *Domino's Pizza, Inc.*, explained:

> When the Civil Rights Act of 1866 was drafted, it was well known
> that '[i]n general a mere agent, who has no beneficial interest in a

contract which he has made on behalf of his principal, cannot support an action thereon.' . . . We have never retreated from what should be obvious from reading the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs and existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship. Absent the requirement that the plaintiff himself must have rights under the contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to *somebody's* contract. We have never read the statue in this unbounded—or rather, *peculiarly* bounded—way.

*Id.* at 476. The Court therefore explained that, while the plaintiff did "identify a contractual relationship, the one between Domino's and [a third party]," the plaintiff was not a party to that contract and therefore did not have a right to bring a claim under § 1981 on the basis of that contractual relationship. *Id.* at 477.

Ms. Hubert has not alleged a contractual relationship with Lieutenant Callender. Indeed, she is employed by the Department of Corrections, not by Mr. Callender. Compl. ¶ 19. She therefore has failed to "initially identify an impaired 'contractual relationship' under which the plaintiff has" or would have rights. *See Domino's Pizza, Inc.*, 546 U.S. at 476. Lieutenant Callender cannot be the proper defendant for Ms. Hubert's § 1981 claim.

### 2. Section 1983 (Count Three)

Ms. Hubert also alleges that, while acting under the color of law, Lieutenant Callender violated Ms. Hubert's First Amendment, Equal Protection Clause, and Due Process Clause rights under 42 U.S.C. § 1983. Am. Compl. ¶¶ 290–93.[3] Defendants respond that Lieutenant Callender

---

[3] Other than stating that Defendants deprived Ms. Hubert of her First Amendment rights, Compl. ¶ 291, Plaintiffs have not alleged facts supporting a violation of the First Amendment. *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks and citations omitted).

is shielded by qualified immunity and move to dismiss this count on that ground. Mot. Dismiss at 23–25.

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws'" by a person acting under the color of state law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989) (quoting 42 U.S.C. § 1983); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (stating that Section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution") (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "Section 1983 does not itself grant substantive rights; rather, it provides 'a method for vindicating federal rights elsewhere conferred.'" *Williams v. City of New York*, 2006 WL 2668211, at *26 (E.D.N.Y. Sept. 11, 2006) (quoting *Patterson*, 375 F.3d at 225 (quoting *Baker*, 443 U.S. at 144 n.3)).

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983). The second inquiry is whether the plaintiff has shown that "[t]he conduct at issue '[was] committed by a person acting under color of state law.'" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Related to the second inquiry, the Complaint must indicate that the challenged action was "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936–37 (1982).

"Public employees have 'a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Bank v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004)). The Second Circuit has held that "the Equal Protection Clause

protects [public] employees from sex-based work discrimination, including hostile work environments and disparate treatment." *Id.* (citing *Demoret*, 451 F.3d at 149; *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Jemmott*, 85 F.3d 97, 114 (2d Cir. 2014)).

### a. Failure to Promote

To bring a failure to promote claim under § 1983, the plaintiff must allege a constitutional violation, such as that she has been treated unfairly as a "class of one":

> In order to establish a cause of action under the equal protection clause based on a "class of one," a plaintiff must demonstrate that she is the victim of "intentional and arbitrary discrimination," *i.e.,* "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Lyon v. Jones*, 260 F. Supp. 2d 507, 513 (D. Conn. 2003), *aff'd*, 91 Fed. App'x 196 (2d Cir. 2004) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000)).

Here, to the extent that Ms. Hubert claims she was not promoted because of her gender, she has failed to establish that she is the "victim of 'intentional and arbitrary discrimination,' *i.e.*, 'that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Id.* at 513 (quoting *Olech*, 528 U.S. at 564–65). Indeed, Ms. Hubert has not asserted that similarly situated individuals were promoted while she was not. *Id.* (citing *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). Ms. Hubert's Section 1983 claim for failure to promote therefore must be dismissed.

### b. Hostile Work Environment

Ms. Hubert also alleges that Lieutenant Callender created a hostile work environment at the DOC by "contribut[ing] to the known, ongoing, and continuously harassing, hostile work environment, retaliatory, and sexually harassing environment known to each Defendant." Am. Compl. ¶ 300. Defendants move to dismiss, arguing that the only claims against Lieutenant

Callender that are not time barred are (1) marking Ms. Hubert late for roll call and (2) questioning her about her choice to use a restroom far from her post, and those incidents do not support constitutional violations. Mot. Dismiss at 16–17.

Under Title VII, in order to establish a hostile work environment claim, the plaintiff would need to show "that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo*, 770 F.3d at 114 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The plaintiff must show that the workplace is both objectively "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* To be sufficiently severe or pervasive, the "incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Alfano*, 294 F.3d at 274 (internal quotation marks omitted)). Courts assess the totality of the circumstances in determining whether an environment is severe or pervasive. *Id.*; *see also Lyon*, 260 F. Supp. 2d at 207 ("In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances of the workplace and the alleged harassment, circumstances which may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'").

Here, in the absence of a Title VII claim, Ms. Hubert's only viable hostile work environment claim is that Lieutenant Callender personally (not the Department of Corrections) violated her constitutional right to be free from sex discrimination under Section 1983. Am. Compl. ¶¶ 290–93; *see also Raspardo*, 770 F.3d at 114 ("Hostile work environment claims under

Title VII thus look to the circumstances of the plaintiff's employment and hold the *employer* liable when the misconduct in the workplace is so severe as to alter the terms and conditions of the plaintiff's employment . . . [but] Section 1983 . . . applies by its terms only to individual 'persons' responsible for violating plaintiffs' rights.").

Because a plaintiff may also choose to bring a Section 1983 claim for hostile work environment, *see Patterson*, 375 F.3d at 226 ("[A]lthough . . . Title VII claims are not cognizable against individuals, individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment[.]"), the defendant may assert qualified immunity as a defense, as Lieutenant Callender has done here. *See* Mot. Dismiss at 23 (claiming that the "bathroom incidents" "fall far short of a civil rights violation," and "no reasonable state official would be on notice that his actions would violate plaintiff's rights"). "In order to overcome a government official's claim to qualified immunity and 'establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right.'" *Raspardo*, 770 F.3d at 115 (quoting *Back*, 365 F.3d at 122). "If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Id.*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) ("Government agents enjoy qualified immunity when they perform discretionary functions if either (1) their conduct 'did not violate clearly established rights of which a reasonable person would have known,' or (2) 'it was objectively reasonable to

believe that [their] acts did not violate these clearly established rights.'") (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)).

Qualified immunity is "*an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Court therefore should consider whether an official is entitled to qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Whether a defendant is entitled to qualified immunity is ordinarily a legal question for the court. *Id.* at 228. "[T]he court should ask whether the [official] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Id.* "If there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury." *Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)). "If there is no material question of fact, the court decides the qualified immunity issue as a matter of law." *Id.*

Defendants here argue that Lieutenant Callender's actions did not violate any clearly established constitutional rights. Plaintiffs allege that Lieutenant Callender repeatedly asked Ms. Hubert to have sex with him, and, after she rebuffed him, disciplined her in retaliation after she arrived late to roll call, despite knowing that Ms. Hubert had a medical condition that caused her to bleed heavily during her menstrual cycle. Am. Compl. ¶¶ 169–70, 174. Defendants, on the other hand, claim that when Ms. Hubert arrived late to roll call, Lieutenant Callender was annoyed that she "wanted to use a different bathroom than the bathroom near her duty station, but did not prohibit her from using the bathroom of her choice." Mot. Dismiss at 25. Plaintiffs argue that those actions clearly violate Plaintiffs' equal protection rights under Section 1983, and

argue therefore Lieutenant Callender should not be entitled to qualified immunity. Opp. Mot. Dismiss at 25.

"[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). That is, the plaintiff is entitled to "all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *Talley v. Brentwood Union Free Sch. Dist.*, 728 F. Supp. 2d 226, 234 (E.D.N.Y. 2010) (quoting *McKenna*, 386 F.3d at 436). Thus, the Court must accept the facts in the light most favorable to Plaintiffs, including that Lieutenant Callender asked Ms. Hubert "when they were going to hook up," and "after [Ms. Hubert] rebuffed this Defendant's sexual advances, he retaliated against her by disciplining her for being late for work by two minutes, despite the fact he was noticed (admitted at his deposition) that she suffered from a medical condition which caused her to bleed heavily during the days of her menstrual cycle." *Id.* ¶¶ 173–74.[4] Plaintiffs further allege that "this Defendant retaliated against the Plaintiff by giving her the worst evaluation she has received during her career at the DOC." *Id.* ¶ 176 (internal quotation marks and citations omitted).

Here, the Court finds that Ms. Hubert has plausibly stated a claim for sex discrimination in violation of the equal protection clause under Section 1983, sufficient to survive Defendants' motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more

---

[4] Defendants claim that when Ms. Hubert arrived late to roll call, Lieutenant Callender was annoyed that she "wanted to use a different bathroom than the bathroom near her duty station, but did not prohibit her from using the bathroom of her choice." Mot. Dismiss at 25. At the motion to dismiss stage, however, the Court must construe the facts in the light most favorable to Plaintiffs. *See Iqbal*, 556 U.S. at 678 (explaining that the Court must accept all factual allegations, but not legal conclusions, in a Complaint as true).

than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (quoting *Twombly*, 550 U.S. at 555). Considering the totality of the circumstances alleged in Ms. Hubert's complaint, the Court finds that Ms. Hubert has sufficiently alleged that Lieutenant Callender's treatment of her was "because of her sex." *See Alfano*, 294 F.3d at 374; *see also Harris*, 510 U.S. at 23; *Lyon*, F. Supp. 2d at 207 (requiring fact finder to consider "totality of the circumstances").

Whether Lieutenant Callender is entitled to qualified immunity is a question better answered at the summary judgment stage, at the very least. *See Harris*, 510 U.S. at 23 ("[W]e can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."). Given that the law is clearly established that the creation of a hostile work environment violates one's constitutional rights, *see Patterson*, 375 F.3d at 226 ("[A]lthough . . . Title VII claims are not cognizable against individuals, individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment[.]"); *Raspardo*, 770 F.3d at 115 ("[W]hen a plaintiff alleges that multiple individual defendants have engaged in uncoordinated and unplanned acts of harassment, each defendant is only liable under § 1983 when his own actions are independently sufficient to create a hostile work environment."), the application of qualified immunity may be inappropriate, but that determination is for another day.

The Court therefore denies Defendants' motion to dismiss as to Plaintiffs' § 1983 claim against Lieutenant Callender with respect to creating a hostile work environment.

### b. State Claims (Counts Two and Four)

Defendants also move to dismiss the tort claims of intentional infliction of emotional distress and loss of consortium against Lieutenant Callender arguing that Plaintiffs have failed to state a claim and that Lieutenant Callender is entitled to statutory immunity. Mot. Dismiss at 25–27. The Court agrees.

### 1. Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress in Connecticut, a plaintiff must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine . . . Only where reasonable minds disagree does it become an issue for the jury.

*Geiger v. Carey*, 170 Conn. App. 459, 497 (2017) (quoting *Gagnon v. Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 846 (2006)). Extreme and outrageous conduct means conduct that goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Appleton v. Board of Education*, 254 Conn. 205, 210–11 (2000)). "In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them." *Golnik v. Amato*, 299 F. Supp. 2d 8, 15 (D. Conn. 2003).

Here, Ms. Hubert alleges that Lieutenant Callender's conduct "was outrageous, severe, and shocking to the conscience," Am. Compl. ¶ 281, and that as a result of the conduct, "Plaintiff manifested physical and emotional harms by way of her breaking out into hives, sweatiness,

insomnia, eating disorder, anxiety, and depression for which she required treatment," *id.* ¶ 283. Other than her description of her emotional harms, however, Ms. Hubert has failed to include any specific facts that would support the elements of intentional infliction of emotional distress, including that Lieutenant Callender intended to inflict distress on her, acted in an extreme and outrageous manner, and that his conduct caused her distress. *See Geiger*, 154 A.3d at 1119; *see Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998) ("Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress."). Because Ms. Hubert has failed to allege more than the conclusory elements of intentional infliction of emotional distress, the Court therefore finds that this Count is dismissed for failure to state a claim under Rule 12(b)(6).[5] Count Two therefore is dismissed.

### 2. Loss of Consortium

Loss of consortium is a tort that, in the "case that an injury to one spouse also damages the spousal relationship, the 'intangible elements' of which had 'been defined as the constellation of companionship, dependence, reliance, affection sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage,' . . . the uninjured spouse should be compensated for any such damage." *Mueller v. Tepler*, 312 Conn. 631, 647 (2014) (quoting *Hopson v. St. Mary's Hospital*, 176 Conn. 485, 496 (1979)). A loss of consortium claim may be alleged by one's spouse and "arise[s] from a personal injury to the other spouse caused by the negligence of a third person." *Hopson*, 176 Conn. at 496.

A loss of consortium claim, however, "is derivative of the injured spouse's cause of

---

[5] Because the Court has found that Ms. Hubert's claim is dismissed under Rule 12(b)(6), the Court need not address Defendants' arguments that Lieutenant Callender is protected by statutory immunity under Connecticut General Statute § 4-165(a).

action," and therefore "the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." *Id.* at 494; *see also Voris v. Molinaro*, 302 Conn. 791, 797 (2011) ("[S]ettlement of the predicate claim extinguishes the derivative claim for loss of consortium[.]"). Because Ms. Hubert's intentional infliction of emotional distress claim against Lieutenant Callender, Count Two, has been dismissed, Mr. Hubert's loss of consortium claim must also be dismissed. *See Hopson*, 176 Conn. at 494 (describing loss of consortium claim as "derivative").

## IV.     CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion to consolidate is **DENIED**. Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to dismiss is denied as to Count Three against Lieutenant Callender, and it is granted as to all other counts. Mr. Hubert is dismissed from this case.

SO ORDERED at Bridgeport, Connecticut, this 30th day of March, 2018.

<u>/s/ Victor A. Bolden</u>
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE