UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHARONE HUBERT,
    *Plaintiff*,

v.

CICERO CALLENDER,
    *Defendant.*

No. 3:17-cv-00248 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Sharone Hubert ("Plaintiff") has sued Lieutenant Cicero Callender ("Lt. Callender" or "Defendant") under 42 U.S.C. § 1983 for allegedly creating a hostile work environment.

Lt. Callender has moved for summary judgment.

For the following reasons, Lt. Callender's motion for summary judgment is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Since 1999, Sharone Hubert has worked for the Connecticut Department of Correction. Def. SMF ¶ 1-2. In her Complaint, Ms. Hubert has alleged having experienced sexual harassment, sexual assault, and race-and gender-based discrimination at the Department of Correction. Compl. ¶ 34.

Her original lawsuit alleged claims against Lieutenant Cicero Callender, the Department of Correction, and three other correctional officers. Lt. Callender, a supervisor at Cheshire Correctional Institution from 2009 to 2014, is the only remaining defendant. Pl. Opp. to Mot. to Dismiss – App. E Callender Deposition, ECF No. 72-17 at 7:13-22 (May 20, 2019) ("Hubert Dep.").

Ms. Hubert alleges a series of actions by Lt. Callender over a period of years. First, Lt. Callender allegedly sent Ms. Hubert a text message calling her sexy and asking her when she was "going to make it happen" in 2011 or 2012. *Id*. at 69:6-24. Second, Lt. Callender allegedly asked Ms. Hubert for a hug four to five times between 2010 and 2014. *Id*. at 11:10-13. Third, Lt. Callender allegedly did not permit Ms. Hubert to change her soiled underwear in one instance in 2014. *Id*. at 13:24-18-21. Fourth, Lt. Callender also allegedly marked Ms. Hubert late to roll call on May 17, 2014, after she had told Lt. Callender that she was going to use the bathroom before roll call. *Id*. at 93:3-16. Finally, Ms. Hubert alleges that Lt. Callender sent another correctional officer and a provisional lieutenant to bang on the bathroom door at one point while Ms. Hubert was using the restroom to change her menstrual pads. *Id*. at 18:9-20.

Lt. Callender denies sending officers to knock on the bathroom door while she was using it, Hubert Dep. at 25:10-19, and denies soliciting sex, asking for hugs, or asking when they were going to hook-up, *id*. at 17:14-18:14.

While Ms. Hubert was assigned to work at Cheshire Correctional Institution, between 2009 and 2014, Lt. Callender was one of her supervisors. *Id*. at 8:3-6. While at Hartford Correctional Center, she was promoted to Lieutenant on September 11, 2009 and then demoted nine months later. Pl. SMF ¶ 6.

Between January 29, 2010 and December 1, 2010, Ms. Hubert was on leave from the Connecticut Department of Correction. Def. SMF ¶ 6.

Ms. Hubert resumed working at Cheshire Correctional Institution in December 2010. Def. SMF ¶ 7; Pl. SMF ¶ 7. Ms. Hubert and Lt. Callender worked the third shift at Cheshire Correctional Institution from December 2, 2010 to October 31, 2011. Def. SMF ¶ 16. On

October 31, 2011, Ms. Hubert transferred from the third shift to the first shift, 6:45 a.m. to 3:00 p.m. Id. ¶ 18.

Ms. Hubert again was on leave from work from December 27, 2011 until March 23, 2012.

She returned to work at Cheshire Correctional Institution from March 23, 2012 to March 27, 2012. Def. SMF ¶ 8-9, but again went on leave from March 28, 2012 to January 21, 2013, Pl. SMF ¶ 10. After her return, she again worked the third shift with Lt. Callender for a period of time. Def. SMF ¶¶ 11, 19.

In May 2013, Lt. Callender evaluated Ms. Hubert's work from September 11, 2010 to August 31, 2011. Def. SMF ¶ 21. He rated her work satisfactory. *Id*. This was the only formal job evaluation of Ms. Hubert that Lt. Callender completed. *Id*. ¶ 22.

On January 3, 2014, Ms. Hubert allegedly was approximately forty-five minutes late for roll call at Cheshire Correctional Institution. *Id*. ¶ 24. Lt. Callender claims that Ms. Hubert did not challenge being marked late on this day, but Ms. Hubert claims she was late because of inclement weather and received a late slip, which the warden voided. Pl. SMF ¶ 25.

On May 17, 2014, Ms. Hubert again was allegedly late for roll call. Def. SMF ¶ 26. That same day, Ms. Hubert allegedly received a formal counseling for her late attendance on May 17 and January 3. Def. SMF ¶ 27. Ms. Hubert denies this. Pl. SMF ¶ 27. Lt. Callender, however, submitted a copy of the May 17 formal counseling. Def. SMF ¶ 28; Mot. for Summ. J. – Ex. A, ECF No. 63-4 at 9 (Apr. 12, 2019).

Ms. Hubert challenged the May 17 formal counseling. Def. SMF ¶ 29. Ms. Hubert allegedly arrived at work early and informed Lieutenant Stewart that she needed to use the bathroom. Pl. SMF ¶ 25. Lieutenant Stewart allegedly gave Ms. Hubert permission. *Id*. She

allegedly asked Lt. Stewart to let Lt. Callender know that she was in the building. *Id.* ¶ 29. Ms. Hubert allegedly had previously told Lt. Callender that she has "a medical problem that cause[s] her to hemorrhage heavily during her menstrual cycle" which required changing her menstrual pads every three hours. *Id*. Ms. Hubert, however, does not state when she communicated this to Lt. Callender. *Id*.

On May 19, 2014, Ms. Hubert allegedly informed a lieutenant that she needed to use the bathroom and would not be at roll call. Def. SMF ¶ 30.

On May 23, 2014, Ms. Hubert allegedly gave the Human Resources department a medical note that stated she had a "gyn condition" that required her "to use the bathroom/restroom to properly change her feminine products up to every three (3) hours as needed." Id. ¶ 31; Mot. for Summ. J. – Ex. B, ECF No. 63-4 at 10 (Apr. 12, 2019). Ms. Hubert previously submitted a doctor's note to the Department of Correction explaining the same condition. Pl. ¶ 31.

Captain Bryan Viger completed an investigation of the May 2014 incidents. He reviewed the NICE Vision system at Cheshire Correctional Institution from May 16-19, 2014. Def. SMF ¶ 35. The report determined that Ms. Hubert was late on May 16, 2014, although she reported it as May 17, 2014). Def. SMF ¶ 37; Mot. for Summary Judgment – Exhibit D, ECF No. 63-4 at 14 (Apr. 12, 2019). She allegedly entered the facility after the lieutenants entered the roll call room. *Id*. In the video, Ms. Hubert allegedly does not stop at the bathroom or anywhere after entering the front lobby. Id. Ms. Hubert objects, finding the investigation inadequate and that "[a] proper and complete investigation would consist of following her from the moment she left home, until she pulled up into the front parking lot." Pl. SMF ¶ 37. Ms. Hubert allegedly was not interviewed for the report. *Id*.

On June 8, 2014, Ms. Hubert allegedly asked Lt. Callender to be relieved from her post to change her feminine hygiene pad in a bathroom located "off the lunchroom rather than the bathroom located at her post." Def. SMF ¶ 40. Lt. Callender allegedly asked why she could not use the bathroom at her post because it was inconvenient to relieve her from her post just to use a different bathroom. Def. SMF ¶ 41. Ms. Hubert allegedly explained that the bathroom in question had no privacy because it "had very thin walls" and bathroom users could be heard in nearby rooms. Pl. SMF ¶ 40. She allegedly was uncomfortable using "a bathroom that could be open[ed] with any key, and where her coworkers could violate her privacy." Id. Lt. Callender allegedly asked why she could not use the bathroom at her post because it was inconvenient to relieve her from her post just to use a different bathroom. Def. SMF ¶ 41.

Lt. Callender nevertheless allegedly sent an officer to relieve Ms. Hubert of her post, enabling to use her preferred bathroom. Def. SMF ¶ 42. Ms. Hubert alleges that Lt. Callender was never accommodating to her requests and at one point called her an inconvenience. Pl. SMF ¶ 42.

After June 12, 2014, upon his transfer to the Manson Youth Institution, Lt. Callender allegedly never worked with Ms. Hubert again. Def. SMF ¶¶ 15, 20.

**B. Procedural History**

On February 16, 2017, Sharone Hubert and Etienne Hubert ("Plaintiffs") filed a Complaint alleging claims under 42 U.S.C. §§ 1981, 1983, 1988, as well as for negligent infliction of emotional distress, and for a loss of consortium. Complaint, ECF No. 1 (Feb. 16, 2017) ("Compl.").

On March 22, 2018, Plaintiffs filed an Amended Complaint against all Defendants. First Amended Complaint, ECF No. 15 (Mar. 22, 2017) ("First Am. Compl.").

On April 24, 2017, Defendants submitted a motion to dismiss. Mot. to Dismiss, ECF No. 20 (Apr. 24, 2017).

On May 15, 2017, Plaintiffs filed an opposition. Pls.' Opp. to Mot. to Dismiss, ECF No. 23 (May 15, 2017).

On May 24, 2017, Defendants filed a reply. Reply, ECF No. 24 (May 24, 2017).

On November 14, 2017, Plaintiffs moved to consolidate this action with *Hubert v. Dept. of Correction*, No. 3:14-cv-476 (VAB) ("Hubert I"). Mot. to Consolidate, ECF No. 28 (Nov. 14, 2017).

On November 22, 2017, Defendants filed a memorandum in opposition to this motion. Opp. to Mot. to Consolidate, ECF No. 29 (Nov. 22, 2017).

On December 11, 2017, the Court held a hearing on the pending motions. Minute Entry, ECF No. 27, 2017 (Dec. 11, 2017).

On March 20, 2018, the Court denied Plaintiffs' motion to consolidate and granted in part and denied in part Defendants' motion to dismiss. Order and Ruling Mot. to Dismiss, ECF No. 33 (Mar. 30, 2018) ("Order Mot. to Dismiss"). The Court dismissed Mr. Hubert from the case and dismissed all counts against all Defendants, except for the 42 U.S.C. § 1983 equal protection and due process clause claims against Lt. Callender. *Id*. at 2, 27.

On April 9, 2018, Ms. Hubert filed a motion for an extension of time to file a motion for reconsideration and a motion in limine. Mot., ECF No. 35 (Apr. 9, 2018).

On April 10, 2018, the Court granted the motion for extension of time and motion in limine. Order, ECF No. 36 (Apr. 10, 2018).

On May 8, 2018, Plaintiff filed a motion for reconsideration to add Deputy Warden Michael Davis, Correctional Officer Kevin Curry, Captain Kyle Godding as defendants. Mot.,

6

ECF No. 42 (May 8, 2018).

On May 10, 2018, the Court granted the motion *nunc pro tunc*. Order, ECF No. 43 (May 10, 2018) ("May 10 Order").

On May 30, 2018, Defendants filed an objection to the motion for reconsideration. Objection, ECF No. 49 (May 30, 2018).

On July 9, 2018, the Court denied the motion for reconsideration but instructed the Clerk of Court to amend the caption to include Lt. Callender as the only defendant. Order, ECF No. 51 (July 9, 2018).

On August 22, 2018, Lt. Callender filed an Answer to the Amended Complaint. Answer, ECF No. 52 (Aug. 22, 2018).

On April 12, 2019, Lt. Callendar filed a motion for summary judgment. Mot. for Summ. J., ECF No. 64 (Apr. 12, 2019).

On May 2, 2019, Ms. Hubert filed a motion for an extension of time to respond to Lt. Callender's motion for summary judgment. Mot. for Extension of Time, ECF No. 64 (May 2, 2019).

On May 3, 2019, the Court granted the extension. Order, ECF No. 65 (May 3, 2019).

On May 9, 2019, Lt. Callender filed a reply, noting Ms. Hubert's failure to respond to the motion for summary judgment. Reply, ECF No. 68 (May 15, 2019).

On May 15, 2019, Ms. Hubert filed a motion asking the Court to accept her response as late-filed because there had been difficulty in transmitting the response electronically. Mot., ECF No. 69 (May 15, 2019).

On May 16, 2019, the Court granted the motion to accept the late filed motion. Order, ECF No. 70 (May 16, 2019).

On May 16, 2019, Ms. Hubert filed a notice to supplement her motion for miscellaneous relief. Notice of Additional Authority, ECF No. 71 (May 16, 2019).

On May 20, 2019, Ms. Hubert also filed a memorandum of law in opposition to Defendant's motion for summary judgment. Pl.'s Opp., ECF No. 72 (May 20, 2019) ("Pl.'s Opp.").

On May 23, 2019, Ms. Hubert filed a second notice of additional authority to correct a file that was inadequately uploaded. Second Notice of Additional Authority, ECF No. 73 (May 23, 2019).

On June 5, 2019, Lt. Callender filed a reply to the opposition for summary judgment. Reply, ECF No. 74 (June 5, 2019).

On November 11, 2019, the Court held a hearing on the pending motion for summary judgment. Calendar Entry, ECF No. 75 (Oct. 9, 2019).

II. **STANDARD OF REVIEW**

A motion for summary judgment will be granted if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the non-moving party's case.

*See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding non-moving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("[A] non-moving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

The Court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). The Court will not credit conclusory allegations or denials. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). After drawing all inferences in favor of the non-moving party, if the Court finds that no reasonable trier of fact could find in the non-movant's favor and the moving party is entitled to judgment as a matter of law, the Court will grant the summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III. DISCUSSION

### A. Section 1983

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws'" by a person acting under the color of state law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989) (quoting 42 U.S.C. § 1983); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (stating that Section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution") (quoting *Baker v. McCollan*, 443 U.S. 147, 144 n.3 (1979)). "Section 1983 does not itself grant substantive rights; rather it provides 'a method for vindicating federal rights elsewhere conferred.'" *Williams v. City of New York*, 2006 WL 2668211, at *26 (E.D.N.Y. Sept. 11, 2006) (quoting *Patterson*, 375 F.3d at 225).

"The first inquiry in any § 1983 suit…is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983). The second inquiry is whether the plaintiff has shown that "[t]he conduct at issue '[was] committed by a person acting under color of state law.'" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Related to the second inquiry, the Complaint must indicate that the challenged action was "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936-37 (1982).

"Public employees have 'a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Bank v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 108, 117 (2d Cir. 2004)). The Second Circuit has held that "the Equal Protection Clause protects [public] employees from sex-based work discrimination, including hostile work

environments and disparate treatment." *Id*. (citing *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)).

Under Section 1983, in order to establish a hostile work environment, the plaintiff would need to show that a defendant's actions "are independently sufficient to create a hostile work environment." *Raspardo*, 770 F.3d at 115. The standard for determining a hostile work environment claim under Section 1983 is not fundamentally different from the same claim under Title VII. As a result, in order to establish a hostile work environment claim, the plaintiff would need to show "that the 'workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo*, 77- F.3d at 114 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The workplace environment must be both objectively "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id*. To be sufficiently severe or pervasive, the "incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id*. (quoting *Alfano*, 294 F.3d at 374 (internal quotation marks omitted)).

Courts assess the totality of the circumstances in determining whether an environment is severe or pervasive. *Id.*; *see also Lyon*, 260 F. Supp. 2d at 207 ("In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances of the workplace and the alleged harassment, circumstances which may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

11

performance.'"). A plaintiff also must prove that the hostility experienced occurred "because of" a protected characteristic, such as sex. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998) ("Title VII prohibits 'discriminat[ion]…because of…sex' in the 'terms' or 'conditions' of employment.").

Discrete acts of discrimination or retaliation that fall outside of the statutory time period preclude recovery. *See N'tl R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Patterson v. Cty. of Oneida*, *N.Y.*, 375 F.3d 206, 225 ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause"). Courts thus may examine "behavior alleged outside the statutory time period . . . for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id*.

"The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],' but to claims that by their nature accure only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (citing *Morgan*, 536 U.S. at 114-15). The inquiry begins by considering whether the plaintiff "alleged any discriminatory acts within the limitations period[.]" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010). If "a sexually offensive incident within the limitations period" occurs, a court may consider preceding incidents, that fall outside of the limitations period, "if the incidents are sufficiently related." *Id*. at 77. A court must make an individualized assessment "of whether incidents and episodes are related." *Id*. (citing *Morgan*, 536 U.S. at 118).

Ms. Hubert argues that she experienced (1) quid pro quo sexual harassment, (2) a hostile

12

work environment, and (3) retaliatory conduct after making a complaint of sexual harassment. Pl. Mem., ECF No. 72-3 at 12, 17, 20 (May 20, 2019) ("Pl. Mem."). In support of her claim against Lt. Callender, Ms. Hubert discusses supervisors that have been terminated and notes that Lt. Callender "controlled and made the roster, which determined who works and where they worked." *Id*. at 14. She relies on the satisfactory evaluation as proof of the impact on her potential promotion and loss in compensation and focuses on her demotion, even though the relevant underlying event—the May 2013 Evaluation—is time-barred. *Id*. at 15.

Ms. Hubert also argues that "[t]he work environment at the [Department of Correction] is hostile, severe, and pervasively sexual and hostile . . . ." *Id*. at 17. Furthermore, the failure of superiors "to take immediate corrective action once they knew or should have known of Defendant Callender's conduct" authorized the harassment and retaliatory conduct. *Id*. at 20. Ms. Hubert again refers to conduct caused by Defendants no longer a part of the case or incidents that fall outside the applicable time period. *Id*. at 17; 24.

Lt. Callender allegedly retaliated against her when he gave her a satisfactory evaluation and then "took every opportunity to embarrass and punish the Plaintiff by denying her request for a bathroom break, and then ordering her coworkers to bang on a bathroom door to publicly tell her to exit the bathroom." *Id*. at 21. Lt. Callender also allegedly aggressively hung up the telephone once, when Ms. Hubert requested a bathroom break. *Id*. at 22.

Lt. Callender argues that none of his actions created a hostile work environment. In his view, any of his alleged actions, whether it is requesting hugs or the May 2014 and June 2014 bathroom incidents, do not constitute a hostile work environment as a matter of law. Mot. for Summary Judgment – Def. Mem, ECF No. 63-1 at 7 (Apr. 12, 2019) ("Def. Mem.").

The Court agrees.

Ms. Hubert's claim against Lt. Callender suffers from a fundamental flaw: the failure to base her claim of a hostile work environment to acts or events occurring after February 14, 2014, the applicable statute of limitations period. Significantly, during the applicable statute of limitations period, Ms. Hubert and Lt. Callender only worked on the same shift from February 16, 2014 through June 12, 2014, a period of less than four months. *See* Def. SMF ¶¶ 11-15 (Ms. Hubert worked at Cheshire Correctional Institution from January 23, 2013 until July 28, 2014. Lt. Callender was transferred to Manson Youth Institution on June 13, 2014). During that period, Lt. Callender allegedly asked her for a hug on more than one occasion, marked her late during a roll call, and sent officers to summon her from the bathroom. Pl. SMF ¶¶ 7; 11; 26; 40-42.

These few incidents over this limited time period, even if problematic in isolation, are not severe or pervasive, nor are they continuous or concerted such that they could be deemed pervasive. *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious do not meet the threshold of severity or pervasiveness." (citations and internal quotation marks omitted)); *see also Matires v. Conn. Dep't of Transp.*, 596 F. Supp. 2d 425, 442-443 (D. Conn. 2009) (finding that a single sexual proposition from a supervisor, two incidents of intentional bumping by a former supervisor, occasional incidents of a former supervisor rubbing up against a plaintiff, occasional incidents of a former supervisor greeting the plaintiff in a workplace, and poor working conditions did not constitute severe and pervasive sexual or race based harassment); *cf. Redd v. N. Y. Div. of Parole*, 678 F.3d 166, 180 (2d Cir. 2012) (finding three

incidents where a supervisor-defendant touched plaintiff's breasts was severely intrusive and could not be considered minor abuse); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000) (finding sufficient evidence of severe and pervasive harassment where a supervisor subjected an employee to regular, if not constant, blatant racial epithets).

Moreover, with respect to at least one of these incidents within the applicable statute of limitations period, the marking her late for roll call—if not more—the absence of record evidence about how male and female employees are treated in this workplace overall means that Ms. Hubert also lacks admissible evidence that her sex was the motivating factor for Lt. Callender's behavior or conduct. *See Demoret*, 451 F.3d at 149-50 ("We must also consider the extent to which the conduct occurred because of plaintiffs' sex."). In other words, Ms. Hubert must establish that Lt. Callender "violated [her] constitutional right to be free from a hostile work environment and disparate treatment on the basis of sex." *Raspardo*, 770 F.3d at 113. Based on the record evidence in this case, she cannot meet this standard.

Background information before the applicable statute of limitations period arguably may be used to support Ms. Hubert's claim. *See Morgan*, 536 U.S. at 117 ("Provided that an act contributing the [hostile work environment] claim occurs within the filing period, the entire period of the hostile environment may be considered by a court for the purposes of determining liability."); *see also Patterson*, 375 F.3d at 225 (recognizing that standards from Title VII are applied in the Section 1981 and Equal Protection Clause context). But Ms. Hubert nevertheless needs actionable conduct within the applicable statute of limitations period in order to maintain her claim, *Morgan*, 536 U.S. at 105 ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment

takes place within the statutory time period."). And, as noted above, she lacks the actionable conduct necessary to maintain her claim.

In any event, Ms. Hubert's hostile work environment claim, as it relates to Lt. Callender alone, fails even if the alleged conduct before February 2014 is considered. *See Terry v. Ashcroft*, 336 F.3d 128, 149 (2d Cir. 2003) (finding that courts examine the totality of circumstances to discern whether a hostile work environment has been created; interference with an employee's ability to work is only one factor). Significantly, again, Ms. Hubert and Lt. Callender only worked on the same shift before February 2014 during two time periods: from December 2, 2010 to October 31, 2011, and from January 23, 2013 to February 16, 2014, two periods separated by far more than a year, and only of one which totaled more than a year. There is nothing in this record during either of these two limited time periods that "is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*." *Terry*, 336 F.3d at 148. (emphasis in the original) (quotation marks and citations omitted).

Significantly, the alleged conduct between December 2, 2010 and October 31, 2011, separated from the relevant period by as much as three and a half years, with gaps in Ms. Hubert's service with the Department of Correction within that time period, is too remote in time to be sufficiently probative. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997) (finding that "it was well within the court's discretion to conclude that" any earlier events "should be excluded on the ground that they were too remote to have probative value," particularly where there was intervening period where the plaintiff was not in the workplace).

Indeed, in both this first time period and the time period from January 23, 2013 to February 16, 2014, Ms. Hubert seeks to rely on incidents different in kind from what occurred

16

during the limited four-month period within the applicable statute of limitations period here. *See Lore v. City of Syracuse*, 670 F.3d 127, 173 (2d Cir. 2012) ("The court '[i]s not required to allow the trial to be diverted into an inquiry into an entirely different incident involving to a significant extent different people, places and events.'" (quoting *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 347 (2d Cir. 1999))).

As a result, the gaps in the time period and the limited duration of Lt. Callender's supervision over Ms. Hubert fundamentally diminish the probative value of any such evidence, making it more prejudicial than probative, given that the underlying conduct must be severe or pervasive within the workplace, and not admissible evidence probative of her claim.

In the absence of a genuine issue of material fact as to Ms. Hubert's Section 1983 hostile work environment claim against Lt. Callender, this claim therefore fails.

Accordingly, the Court will dismiss Ms. Hubert's Section 1983 hostile work environment claim against Lt. Callender.

### B. Qualified Immunity

Section 1983 requires a defendant to have personally violated a plaintiff's constitutional rights. *Id.* at 115. As a result, to overcome a claim of qualified immunity, "a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right.'" *Id.* (quoting *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)). A defendant is liable, then, when "his own actions are independently sufficient to create a hostile work environment." *Id.* Without such behavior, a defendant "is entitled to qualified immunity." *Id.* Personal involvement can be shown by:

> "evidence that: (1) the defendant participated in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant

17

was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failed to act on information indicating that unconstitutional acts were occurring."

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Because Ms. Hubert's § 1983 claim fails, the Court need not reach Lt. Callender's motion for summary judgment on qualified immunity grounds. But given the absence of the violation of constitutional rights discussed above, qualified immunity would be an alternative basis for granting summary judgment in Lt. Callender's favor.[1]

## IV. CONCLUSION

For the foregoing reasons, Lt. Callender's motion for summary judgment is **GRANTED.**

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of November, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[1] Significantly, on October 6, 2014, nearly four months after Lt. Callender stopped working with Ms. Hubert, the Second Circuit held that: "We therefore cannot say that it is clearly established law that an individual defendant has violated a plaintiff's equal protection rights if he has not personally behaved in such a way as to create an atmosphere of severe or pervasive harassment. Accordingly, absent such behavior, an individual defendant is entitled to qualified immunity." *Raspardo*, 770 F.3d at 115.